UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
MOONBUG ENTERTAINMENT LIMITED
AND TREASURE STUDIO INC,

            Plaintiffs,

       - against –

AUTUMN SELL, AYLIN,BG BOD,
COOLEMA, CORODER, DAWEI PARTY,
EXCELLETOYZ, E-YONG, FIRST
SIGHT 1986, GAVIN DIRECT US,
GREATPARTYGIF,
GUANGDONGCHENGQIANGJIANSHEGONGC
HE NGYOUXIANGONGSI, GUILIN
MINGXUAN, GUOYUJIA, HAORANKE
GIFT SHOP, HUGEONE, JH112,
JIEOU, JUSUWK, KALENO DIRECT,
KRUIDENIERSWINKELS, LIGEN-TECH,
LINZHIDIANZI, MANGO LADY,
MARWIO, MEISIYU, MOUISITON
MALL, PINK ROM, QIDUN TRADE CO
LTD, RUNHOME,
RUNNIANSHANGWU168, SHUERJIA,
SZMIYU, TELIKE, THUCI,
TINTING3, TONGPAOTIYU, VISIT
THE PP TOY STORE, W_MALL,
WELLCHOY,
WUDIXIANSOAIESYFBAIHUODIAN,
XINGXIU,
YIMENGFUSHIYOUXIANGONGSI,
YIONEYI, YURDOOP, AND
西咸新区沣东新城代环涛百货店,

            Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

21 Civ. 10328 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiffs Moonbug Entertainment Limited and Treasure Studio

Inc. (collectively, "Moonbug" or "plaintiffs") brought this suit

under the Lanham Act and the Copyright Act on December 3, 2021
after learning of the sale of counterfeit products featuring their
marks related to CoComelon, a popular Youtube program, by several
Chinese third-party merchants on Amazon.[1]  As little information
is available publicly about these merchants, plaintiffs were
forced to rely on the information available on Amazon's website in
constructing their complaint and issuing summons.

   To this day, most of the defendants have not appeared.
However, on March 3, 2022, two defendants, Dawei and Wellchoy
(collectively, "moving defendants"),[2] appeared in order to file
the present motion, which argues that the case against them should
be dismissed with prejudice because service by email was improper,
the defendants were misnamed, and there is no personal jurisdiction
over moving defendants.  <u>See</u> Defendants' Motion to Dismiss
Plaintiff's Complaint ("Def. Br."), ECF No. 18.  The predicate of

---

[1] The complaint alleges six causes of action.  This includes claims for trademark
counterfeiting, infringement of registered and unregistered trademarks, passing
off and unfair competition under the Lanham Act, as well as a federal copyright
infringement claim and an unfair competition claim under New York law.  <u>See</u> ECF
No. 4.

[2] The Court refers to the defendants as "Dawei" and "Wellchoy," as that is how
moving defendants' motion lists the names.  Def. Br. at 1.  According to
plaintiffs, the names on moving defendants' Amazon merchant storefronts at the
time of the summons were "Dawei Party" and "Wellchoy."  Affidavit of Danielle
Futterman in Opposition to Defendants Dawei Party and Wellchoy's Motion to
Dismiss ("Futterman Decl.") ¶ 18, ECF No. 21.  Plaintiffs allege that at the
time the motion was filed, the name on Dawei's Merchant Storefront had been
changed to "DaWei Cat and Dog."  <u>Id.</u>

the motion is that plaintiffs have not properly identified the moving defendants by name or address.  But, it is clear that the moving defendants obscured their identities and location information.  Defendants effectively pushed the plaintiffs in front of the baseline, and now ask the Court to call a foot fault. The Court declines to do so.  For the reasons discussed below, the moving defendants' motion is denied in its entirety.

**BACKGROUND**

On December 3, 2021, plaintiffs filed an ex parte application for a temporary restraining order ("TRO") after discovery of the counterfeit products, and on December 4, 2021, plaintiffs filed their complaint.  See ECF Nos. 4, 9.  In addition to enjoining the sale of the counterfeit goods, the TRO requested that the Court permit alternative service by email.  See TRO, Dec. 6, 2021.  On December 6, 2021, we signed the TRO and allowed the plaintiffs to serve defendants by:

> delivery of: (1) PDF copies of this Order together with the Summons and Complaint, and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorlawsuit.com) where each Defendant will be able to download PDF copies of this Order together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking this Order to Defendant's email addresses to be determined by Amazon pursuant to paragraph V(C) or may otherwise be determined.

TRO at 10.

Given the lack of information available publicly to plaintiffs, the TRO also sought third-party discovery from Amazon and expedited discovery from the defendants. Futterman Decl. ¶¶ 7, 15. Specifically, plaintiffs sought the "true name and physical address" of the defendants, as well as "identifying information for Defendants and Defendants' User Accounts and Defendants' Merchant Storefronts, [and] contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses)."[3] TRO at 12-13.

Upon receiving the production from Amazon which identified the email addresses and physical addresses associated with the allegedly infringing merchant storefronts, plaintiffs served all defendants by email, following the procedure outlined by the TRO. Futterman Decl. ¶ 11. RMail receipts indicate the emails were delivered. Id. ¶ 12.

The Court presumes that the moving defendants received these emails, because on February 6, 2022 and March 23, 2022 moving defendants provided the expedited discovery as requested by the TRO. Id. ¶ 15. The production included the email addresses,

---

[3] It is the Court's understanding that merchant storefronts are how merchants can sell goods on Amazon. Those sellers need to create user accounts with Amazon to operate these storefronts. Futterman Decl. ¶ 8.

physical addresses, and sales figures for the moving defendants.
Id. ¶¶ 16-17. While the email addresses in this production matched
the ones provided by Amazon on December 16, 2021, the physical
addresses differed from both the ones identified in the Amazon
production and the separate addresses listed on the Amazon merchant
storefronts. Id. ¶¶ 9 n.3, 17.

In addition, prior to the second production from moving
defendants, on March 3, 2022, they filed the present motion to
dismiss. See Def. Br. Defendants argued that the service by email
was improper, as the Hague Convention and Chinese law do not permit
this type of service. Id. at 1-4. Next, the motion argues that
the defendants were not properly identified in the summons, as
plaintiff used the names on the Amazon merchant storefronts, but
those are not proper legal entities. Id. at 7-8. Finally, the
motion argues that there is no personal jurisdiction over the
moving defendants as they are Chinese and have no offices in the
United States. Id. at 4-7.

Even after the motion was filed, plaintiffs claim to have
found additional counterfeit products on defendant Dawei's
merchant storefront. In fact, on March 31, 2022, plaintiffs' law
firm purchased an alleged counterfeit product from defendant
Dawei's merchant storefront for delivery to its New York office.

Futterman Decl. ¶ 19.[4]  In addition, plaintiffs' counsel had its Beijing office investigate the addresses associated with the moving defendants' Amazon storefronts and confirmed that no company names associated with those storefronts were associated with the addresses.  Id. ¶ 24.

**DISCUSSION**

The Court addresses each alleged defect separately and finds all to be meritless.

### I.   Service

First, the moving defendants argue that, despite appearing in the case, they were not properly served, because service was by email, which is not permitted by Chinese law or the Hague Convention.  Def. Br. at 3.  They argue that this failure should result in dismissal, which the Court interprets as a motion under Rule 12(b)(5).[5]  Id.  "On a Rule 12(b)(5) motion to dismiss for insufficient service, the plaintiff bears the burden of establishing that service was sufficient."  Khan v. Khan, 360 Fed.

---

[4] At the time that plaintiffs filed their reply, on April 5, 2022, the package had not yet been received.  However, the order confirmation for the purchase indicated a delivery date of "April 21-May 12."  Futterman Decl. ¶ 19; Exhibit E.

[5] Defendants' brief does not state the specific rule, but claims that the complaint should be dismissed for "deficient service of process."  Def. Br. at 1.  This is a motion under Rule 12(b)(5).  Fed. R. Civ. P. 12(b)(5) ("[A] party may assert the following defenses by motion: . . . (5) insufficient service of process").

Appx. 202, 203 (2d Cir. 2010) (citing <u>Burda Media, Inc. v. Viertel</u>, 417 F.3d 292, 298 (2d Cir. 2005)).  When determining whether a plaintiff has met its burden, the Court may review material outside the pleadings, including affidavits and other supporting materials.  <u>See</u> <u>Mende v. Milestone Tech., Inc.</u>, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

To evaluate whether service is sufficient, the Court looks to the rules governing service under Rule 4, and specifically Rule 4(f) for service on foreign defendants.  Fed. R. Civ. P. 4.  When the United States and the country of the defendant are signatories of the Hague Convention, which is undisputed here, Rule 4(f) requires that the defendant be served pursuant to the Hague Convention.  <u>Smart Study Co. v. Acuteye-Us</u>, No. 21-cv-5860, 2022 WL 2872297, at *4 (S.D.N.Y. Jul. 21, 2022).

However, the Hague Convention does not apply "where the address of the person to be served with the document is not known." <u>Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen</u>, No. 14-cv-1112, 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018).  The address is not known if "the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so."  <u>Id.</u>  In that case, the Court only needs to consider whether service complied with

Rule 4(f)(3).[6]   Id. at 5.

Courts in this district have routinely allowed service by email on Chinese defendants under Rule 4(f). See e.g., Sulzer, 312 F.R.D. 329; Elsevier, Inc. v. Siew Yee Chew, 287 F. Supp. 3d 374 (S.D.N.Y. 2018). It was only recently in an opinion by Judge Woods that the question even arose as to whether the Hague Convention permitted service by email on Chinese defendants. Smart Study Co., 2022 WL 2872297, at * 7.[7]

However, there is no issue if plaintiffs exercised reasonable diligence to determine an address. Reasonable diligence requires more than a "mere perusal of a defendant's storefront." Smart Study, 2022 WL 2872297, at *6. For instance, one court found that a plaintiff exercised reasonable diligence by investigating physical addresses on a defendant's website, completing multiple internet searches, calling known phone numbers, and conducting in-person visits. Advanced Access, 2018 WL 4757939, at *4. Another court in this district found that investigating the addresses on websites and shipping labels, as well as sending local counsel to

---

[6] "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court. Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd., 312 F.R.D. 329, 330 (S.D.N.Y. 2015) (quoting Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)). In the TRO, the Court already granted alternative service by email under Rule 4(f)(3). TRO at 10.

[7] The decision is currently on appeal to the Second Circuit. Dkt. No. 22-1810.

identify a physical address in China, established reasonable
diligence. <u>Kelly Toy Holdings, LLC. v. Toy Dep't Store</u>, No. 22-
cv-558, 2022 WL 3701216, at *6 (S.D.N.Y. Aug. 26, 2022).  In
holding that the plaintiff did not show reasonable diligence, Judge
Woods considered that "plaintiffs do not claim that they sought
information from Amazon regarding the defendants' addresses, nor
do they claim to have taken any additional steps to determine the
defendants' addresses." <u>Smart Study</u>, 2022 WL 2872298, at *6.

Here, plaintiffs have clearly shown reasonable diligence in
attempting to identify a physical address.  Immediately upon filing
this case, plaintiffs sought the physical and email addresses from
Amazon that were associated with the moving defendants' Amazon
user accounts and merchant storefronts.  Futterman Decl. ¶ 7.
Plaintiffs also investigated the addresses displayed on the moving
defendants' Amazon merchant storefronts.  <u>Id.</u> ¶¶ 20-24.
Fortunately, plaintiffs' counsel, Epstein Drangel, has a Beijing
office that was able to translate the addresses and confirm that
the addresses from the Amazon merchant storefronts were false as
"the company names associated with Moving Defendants' Merchant
Storefronts were not located at the [] addresses." <u>Id.</u> ¶ 24.
Finally, plaintiffs were able to confirm these addresses were
incorrect by comparing them to the ones produced by moving

defendants in expedited discovery.  Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Br.") at 4 n.3.  This discovery revealed a third address for each moving defendant that was inconsistent with either address plaintiffs identified through Amazon.  Id.

Nevertheless, the moving defendants argue that "plaintiff has not shown they exercised reasonable diligence in attempting to discover a physical address for either defendant," without pointing to any information available to plaintiffs that would have included moving defendants' correct address or disclosing an active address.  Defendants' Reply To Plaintiffs' Opposition ("Def. Reply Br.") at 1, ECF No. 26.  In rebuttal, plaintiffs state that "third-party merchants on Amazon, like Defendants, have been known to use aliases, false addresses, and other incomplete identifying information to shield their true identities."  Futterman Decl. ¶ 13.  However, "having a good and accurate email address is necessary for Defendants to operate their User Accounts and Merchant Storefronts on Amazon" and it is "[f]or this reason [that] service by email has proved to be the method of service most reasonably calculated to apprise Defendants of the pendency of this action."  Id. ¶ 14; see also Sulzer, 312 F.R.D. at 332 ("Email communications may be more reliable than long distance

-10-

postal communications".).

The productions in this case prove that plaintiff is correct, and that email service provides "notice reasonably calculated", consistent with the requirements of alternative service under Rule 4(f)(3). Advanced Access, 2018 WL 4757939, at *5; see also Mattel, Inc. v. Animefun Store, No 18-cv-8824, 2020 WL 2097624, at *5 (S.D.N.Y. May 1, 2020). While the defendants included what appear to be false addresses on their Amazon accounts and storefronts, the email addresses provided by Amazon and used to effect service were the same emails identified by defendants' own expedited discovery. Futterman Decl. ¶ 9 n.3. Any argument that defendants would have received proper notice through use of the inconsistent and likely false physical addresses, as opposed to the verified email, is wholly without basis.[8]

Finally, there is little practical effect of the motion to dismiss for insufficient service of process. While moving defendants seek to dismiss the complaint with prejudice, Def. Br. at 8, even if the service was improper, the Court would either "dismiss the action without prejudice or [] quash service and

---

[8] Since the Court holds that there was reasonable diligence (and thus the Hague Convention does not apply) and that alternative service under 4(f)(3) is proper, there is no need for the Court to evaluate whether service was proper under Rule 4(f)(2)(A).

direct the plaintiff to effect service within a specific period of time." See 2 Moore's Federal Practice, § 12.33[5] (Matthew Bender 3d Ed.). The statute of limitations has not yet run as the plaintiffs allege that, at a minimum, defendant Dawei was still infringing as of March 31, 2022. Futterman Decl. ¶ 18. Thus, under either scenario plaintiffs could pursue this case.

## II. Misnamed Defendants

In a similar vein, defendants also argue that the summons improperly names the defendants, and thus should be dismissed under 12(b)(4) or 12(b)(5).[9] Def. Br. at 8. The summons lists the names that appear on the allegedly infringing Amazon merchant storefronts at the time of the summons, "Dawei Party" and "Wellchoy", however, according to moving defendants "the summons does not contain the correct names of any legal entities." Def. Br. at 8. Once again, this argument is without merit.

For there to be sufficiency of process, the summons must comply with Rule 4, which requires that summons "name the court and the parties," "be directed to the defendant," "be signed by

---

[9] Moving defendants allege that the problem with service is that the defendants were misnamed, not that the plaintiffs identified the wrong defendants. Therefore, the Court treats moving defendants' motion as one for insufficient process under 12(b)(4), as opposed to insufficient service under 12(b)(5). See 2 Moore's Federal Practice, §§ 12.33[3], [4] (Matthew Bender 3d Ed.) ("Moving for dismissal under Rule 12(b)(4) challenges the sufficiency of the process, itself, rather than the service of process. . . . A Rule 12(b)(5) motion challenges the service of the summons, rather than the summons itself.").

the clerk" and "bear the court's seal."  Fed. R. Civ. P. 4(a).
The purpose of the service of a summons is to "provid[e] the
defendant with notice that an action has commenced."  1 Moore's
Federal Practice, § 4.03[1] (Matthew Bender 3d Ed.).

While a defendant's name "must appear conspicuously on the
summons," a summons that "fails to properly state the defendant's
name, and thus, technically is not directed to defendant is not
jurisdictionally defective if defendant is not prejudiced by the
error."  1 Moore's Federal Practice, § 4.30[2] (Matthew Bender 3d
Ed.).  There is no prejudice if "defendant receives actual notice"
and plaintiff "proffers a justifiable reason to properly direct
the summons to the defendant."  Id.

Moving defendants do not claim that they are not responsible
for the Dawei and Wellchoy Amazon merchant storefronts.  Nor do
they suggest what name should have been used in the summons.
Moving defendants' own production does not identify the legal
entity for the account.  See Exhibit B to Futterman Decl.  Further,
plaintiffs claim that after the motion to dismiss was filed, the
Merchant Storefront name of "Dawei Party" was changed to "DaWei
Cat and Dog."  Futterman Decl. ¶ 18.  There was no way for
plaintiffs to identify the proper entity.  At this point, moving
defendants clearly have received notice of the suit (evidenced by

their response to the request for expedited discovery) and, as discussed in the previous section, service was proper. Defendants cannot obscure their identities by using false names through Amazon, and then use the fact that the names are incorrect to evade a lawsuit. Therefore, the Court rejects the contention that process was insufficient.

### III. Personal Jurisdiction

Finally, the moving defendants argue there is no personal jurisdiction because "Defendants' principal places of business are in China," "[t]hey have no offices in the United States and certainly not in the jurisdiction of the Southern District of New York," and "[t]heir principals are all Chinese nationals and do not travel to the United States." Def. Br. at 5-6. While the Court may not have general jurisdiction over defendants, the Court can certainly exercise specific personal jurisdiction.

In a motion to dismiss, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010). In deciding a motion to dismiss for lack of personal jurisdiction, "[t]he court assumes the verity of the [plaintiff's] allegations 'to the extent they are uncontroverted by the defendants affidavits.'" Jonas v. Est of Leven, 116 F. Supp. 3d 314, 323

-14-

(S.D.N.Y. 2015) (quoting <u>MacDermid, Inc. v. Deiter</u>, 702 F.3d 725, 727 (2d Cir. 2012)).   Further, "jurisdictional allegations are 'construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor.'"   <u>George Moundreas & Co. SA v. Jinhai Intelligent Mfg. Co. Ltd.</u>, No. 20-cv-2626, 2021 WL 168930, at *3 (quoting <u>A.I. Trade Fin., Inc. v. Petra Bank</u>, 989 F.2d 76, 79-80 (2d Cir. 1993)).

"In cases such as this, where the claims arise under federal statutes that do not contain their own jurisdictional provisions — <u>i.e.</u>, the Copyright Act and the Lanham Act — 'federal courts are to apply the personal jurisdiction rules of the forum state, . . . provided that those rules are consistent with the requirements of Due Process.'"   <u>Pearson Education, Inc. v. ABC Books, LLC</u>, No. 19-cv-7642, 2020 WL 3547217, at *4 (S.D.N.Y. June 30, 2020) (quoting <u>Am. Buddha</u>, 609 F.3d at 35)(alteration in original).   This creates a two-step inquiry:  first, the Court must determine whether there is jurisdiction under the law of the forum state, here the New York long-arm statute; and second, the Court must determine if the exercise of jurisdiction comports with Due Process.

> **a. New York Long-Arm Statute**

The New York long-arm statute authorizes specific jurisdiction over defendants who "transact[] any business within

the state or contract[]anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1) ("§ 302(a)(1)"). Courts have interpreted "transact business" to mean that the defendant must have "purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

Proof of as little as "one transaction in New York is sufficient to confer jurisdiction, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 170 (2d Cir. 2010) (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 466 (N.Y. Ct. App. 1988)). The Second Circuit has held that it is purposeful to sell goods in the forum using an interactive website, even when the defendant is not physically present. Id. at 170.

Moving defendants do not deny that they sold goods in New York. Defendants' own discovery in fact shows that that defendant Dawei has sold 1,958 products to consumers in the United States and 170 products to New York consumers. Futterman Decl. ¶ 16. Similarly, defendant Wellchoy has sold 3,747 products in the United States and 255 products to consumers in New York. Id. The

plaintiffs have even performed a test purchase of a counterfeit product to its attorneys' office in New York.  Id. ¶ 19.  These sales are well in excess of the requirements of the New York long-arm statute.  Moreover, there is a clear relationship between the transactions (i.e., sales of CoComelon products) in the forum and the trademark and copyright claims regarding sales of counterfeit CoComelon products asserted by this lawsuit.  The basis for the lawsuit is that defendants sold counterfeit products using Amazon.

Nonetheless, moving defendants argue that there is no jurisdiction since "[d]efendants have no website" and "[p]laintiffs allege that they sold products on Amazon."  Def. Br. at 7.  However, that argument ignores the law.  "Courts in this district have nonetheless concluded that '[r]egularly offering and selling goods via an online marketplace such as Amazon.com can provide a basis for personal jurisdiction under CPLR § 302(a), even though Defendants do not control their Amazon.com storefront or its interactivity to the same extent that they control their own highly interactive website."  Pearson, 2020 WL 3547217, at *6 (quoting Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Company, LLC, No. 15-cv-8459, 2016 WL 3748480, at *3 (S.D.N.Y. May 10, 2016)).

In sum, defendants' actions more than satisfy the

requirements of § 302(a)(1).[10]

### b. Due Process

Moving to the second step of the inquiry, defendants' motion once again fails as the exercise of jurisdiction comports with Due Process.  Due Process for personal jurisdiction has "two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry."  Chloe, 616 F.3d at 164.  The minimum contacts inquiry, like § 302(a), requires that a defendant purposefully avail itself of the privileges of the forum.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).  Thus, for the same reasons that jurisdiction is appropriate under § 302(a)(1), so too is the minimum contacts requirement.  See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 105 (2d Cir. 2006)("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements.");  see also Chloe, 616 F.3d at 171; Pearson, 2020 WL 3547271, at *8.

Next, the Court considers whether the exercise of jurisdiction is reasonable, meaning whether it comports with

---

[10] While the plaintiffs assert that "[m]oving defendants are also subject to jurisdiction under § 302(a)(3)," Pl. Br. at 12 n.7, the Court need not analyze this provision, as we have held that moving defendants' actions satisfy §302(a)(1).

"traditional notions of fair play and substantial justice." Chloe, 616 F.3d at 164 (quoting Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945)).  In deciding whether jurisdiction is reasonable, courts must evaluate: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the shared interests of the states in furthering substantive policies." Id. (citing Asahi Metal Indus. Co., Ltd. v. Superior Ct. of California, 480 U.S. 102, 113-114 (1987)).

Once a plaintiff makes a threshold showing that minimum contacts are met, as plaintiffs have done here, the defendant must provide a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." Metro. Life Ins. Co. v. Roberton-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996)(quoting Burger King, 471 U.S. at 477).  In their motion, moving defendants do not even attempt to argue that the exercise of jurisdiction is not reasonable.  All defendants say is that courts should exercise "great care and reserve . . . when extending our notions of personal jurisdiction into the

international context." Def. Br. at 7 (quoting S.E.C. v. Sharef,
924 F. Supp. 2d 539, 548 (S.D.N.Y. 2013)).  The only Asahi factor
that supports defendants is that moving defendant are not in the
United States.     But, given the "conveniences of modern
communication and transportation," this only provides weak
support.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
305 F.3d 120, 129-130 (2d Cir. 2002).  On the other hand, while
the plaintiffs are not New York residents,[11] there are "shared
interests of the states in furthering social policies, here the
intellectual property laws established by the Lanham Act, [which]
also weigh in favor of personal jurisdiction here," and since this
suit is pending "it thus provides the most efficient path to
resolution." Lifeguard Licensing Corp., 2016 WL 3748480, at *4.
Therefore, moving defendants have failed to present a compelling
reason that jurisdiction offends the traditional notions of fair
play and substantial justice and the motion to dismiss for lack of
personal jurisdiction is denied.

## CONCLUSION

Accordingly, for the reasons stated above, the Court denies

---

[11] The complaint alleges that plaintiff Moonbug Entertainment Limited is a
"private limited company organized and existing under the laws of the United
Kingdom" with an address in London, and Plaintiff Treasure Studio Inc. is a
California Corporation. See Compl. ¶¶ 5-6, ECF No. 4.

the moving defendants' motion in its entirety.  The Clerk of the
Court is respectfully directed to close the motion pending at ECF
No. 18.

        **SO ORDERED.**


Dated:    New York, New York
          February 16, 2023

                          NAOMI REICE BUCHWALD
                    UNITED STATES DISTRICT JUDGE